## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0009

THE ANCHORAGE ASSOCIATION, INC.

VERSUS

DOUGLAS AND MARY BETH MEYER

*DATE OF JUDGMENT:*     DEC 1 6 2019

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
NUMBER 2015-14337, DIVISION F, PARISH OF ST. TAMMANY
STATE OF LOUISIANA

HONORABLE MARTIN E. COADY, JUDGE

* * * * * *

Stephen K. Conroy
Metairie, Louisiana

Amanda D. Hogue
Covington, Louisiana

Patrick J. Berrigan
Slidell, Louisiana

Counsel for Plaintiff - Appellee
The Anchorage Association, Inc.

Counsel for Defendants - Appellants
Douglas and Mary Beth Meyer

* * * * * *

BEFORE: WHIPPLE, C.J., McDONALD, THERIOT, HOLDRIDGE, AND
CHUTZ, JJ.

Disposition: REVERSED AND REMANDED.

McDonald, J. concurs.

**CHUTZ, J.**

Defendants, Douglas and Mary Beth Meyer (the Meyers), appeal a summary judgment ordering them to pay plaintiff, The Anchorage Association, Inc. (the Anchorage), $23,650.53 for unpaid condominium association assessments, attorney fees, costs, and judicial interest. For the following reasons, we reverse the summary judgment and remand this matter to the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2007 and November 2008, respectively, the Meyers purchased Unit 211 and Unit 115 of the Anchorage Condominiums in Slidell, Louisiana. In the acts of cash sale, the Meyers agreed the sales were in accordance with and subject to the First Amended and Reinstated Condominium Declaration, dated May 3, 2007 (Condominium Declaration).

On June 29, 2015, in accordance with La. R.S. 9:1123.115, the Anchorage filed a Claim of Privilege on Unit 115 in the amount of $10,266.38 and a Claim of Privilege on Unit 211 in the amount of $8,881.97 for delinquent assessments, fines, attorney fees, and costs. On October 27, 2015, the Anchorage filed suit against the Meyers claiming the amounts owed remained unpaid. In an unrelated proceeding, Unit 115 was sold at auction in May 2016 following foreclosure.

On May 24, 2017, the Anchorage filed a motion for summary judgment seeking an award of $17,439.50 for assessments owed on Unit 115, $10,023.45 in attorney fees and costs, and $1,787.32 in judicial interest, a total of $29,250.27. In its supporting memorandum, the Anchorage stated Unit 211 was sold to a third party in November 2016. In exchange for a payment of $16,809.58, the Anchorage released its Claim of Privilege on Unit 211. Accordingly, the amount sought by the Anchorage for Unit 211 included only the interest and attorney fees attributable to Unit 211.

2

A hearing was held on the Anchorage's motion for summary judgment on September 20, 2017. The Meyers' attorney was not present at the hearing. At the conclusion of the hearing, the district court granted summary judgment in favor of the Anchorage, awarding it unpaid assessments and $5,000.00 in attorney fees. The district court ruled the Anchorage was not entitled to recover "the $100.00 per month late fee" on the unpaid assessments. On October 16, 2017, the district court signed a judgment awarding the Anchorage $15,839.50 for unpaid assessments, $5,000.00 for attorney fees, $1,023.71 for costs, and $1,787.32 for judicial interest, a total of $23,650.53.

Upon receiving notice of judgment, the Meyers' attorney filed a motion for new trial on the basis that he failed to appear at the motion hearing because he believed the matter had been continued. After a hearing, the district court orally granted a new trial "in the interest of justice," and then reaffirmed the prior summary judgment in favor of the Anchorage. On January 9, 2018, the district court signed a judgment in accordance with its oral ruling, which reaffirmed "the [Summary] Judgment entered on October 16, 2017." The Meyers appealed.

This court *ex proprio motu* issued a rule to show cause why the appeal should not be dismissed for lack of the specificity necessary to constitute a final, appealable judgment. In particular, the January 9, 2018 judgment required reference to an extrinsic document since the judgment merely reaffirmed the October 16, 2017 judgment without delineating the relief granted in the earlier judgment. See *The Anchorage Association, Inc. v. Douglas and Mary Beth Meyer*, 18-0528 (La. App. 1st Cir. 4/24/18) (unpublished order). Subsequently, this court dismissed the Meyers' appeal, noting a new appeal could be taken after a final, appealable judgment was signed. See *The Anchorage Association, Inc. v. Douglas and Mary Beth Meyer*, 18-0528 (La. App. 1st Cir. 7/23/18) (unpublished order).

The district court signed an amended judgment on August 22, 2018, which granted the Meyers' motion for new trial and granted summary judgment in favor of the Anchorage awarding a total of $23,650.53, consisting of $15,839.50 for unpaid assessments, $5,000.00 for attorney fees, $1,023.71 for costs, and $1,787.32 for judicial interest. The Meyers now appeal the August 22, 2018 summary judgment, arguing in three assignments of error that the district court erred in granting summary judgment.

## APPLICABLE LAW

Appellate courts review the granting or denial of a motion for summary judgment *de novo* under the same criteria governing the district court's determination of whether summary judgment is appropriate. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So.3d 1002, 1005-06. A motion for summary judgment shall be granted only if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions admitted for purposes of the motion for summary judgment show there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4). Moreover, all doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765-66 (*per curiam*); *Neighbors Federal Credit Union v. Anderson*, 15-1020 (La. App. 1st Cir. 6/3/16), 196 So.3d 727, 735.

The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). When the mover will bear the burden of proof at trial, it must be determined that his supporting documents are sufficient to resolve all material issues of fact. Only if they are sufficient does the burden shift to the opposing party to present evidence showing an issue of material fact exists. *Neighbors Federal Credit Union*, 196 So.3d at 734. If the mover does not resolve all material issues of fact, however, the burden never shifts to the opposing party. In that situation, the opposing party has nothing to prove

4

in response to the motion for summary judgment, and summary judgment should be denied. See *Hat's Equipment, Inc. v. WHM, L.L.C.*, 11-1982 (La. App. 1st Cir. 5/4/12), 92 So.3d 1072, 1076.

## DISCUSSION

In their first assignment of error, the Meyers argue Unit 115 was not subject to the rules, regulations, charges, or fees of the condominium association because it was not part of the Anchorage condominium regime. Specifically, they contend Unit 115 was not listed as a part of the condominium regime in the May 2007 Condominium Declaration.

Neither party introduced the entire Condominium Declaration into evidence. However, the Meyers presented a page of the Condominium Declaration that contained a list of the units in Building A of the condominium project, which was located at 1244 Harbor Drive in Slidell. Although Unit 115 bears the same municipal address, it is not included on the list. Regardless of this omission, there is no question the Meyers contractually agreed Unit 115 was subject to Condominium Declaration. The Meyers acknowledge this fact in brief and, moreover, admit the Condominium Declaration gives the Anchorage Board of Directors authority to set reasonable dues and late charges to maintain the buildings and operations.

The act of sale by which the Meyers acquired ownership of Unit 115 described the unit, in part, as follows:

> That certain condominium unit of THE ANCHORAGE – A CONDOMINIUM, designated as 1244 Harbor Drive, Unit 115, together with a .48% undivided interest in the Common Areas associated therewith, in accordance with the "FIRST AMENDED AND RESTATED CONDOMINIUM DECLARATION ... CREATING AND ESTABLISHING A CONDOMINIUM REGIME FOR THE ANCHORAGE – A CONDOMINIUM" dated May 3, 2007.

Further, the act of sale included specific language declaring the sale was "made and accepted" subject to the May 2007 Condominium Declaration. Under the

5

circumstances, the Meyers' argument that Unit 115 was not subject to the condominium rules, regulations, charges or fees lacks merit.

In their second assignment of error, the Meyers argue the evidence presented by the Anchorage was insufficient to accurately establish the amount owed. They contend the account statement relied upon by the Anchorage to show the assessments and fines charged to Unit 115 was unreliable and speculative because it included an undelineated "Balance Forward" amount, making it impossible to determine the nature of the charges imposed. We agree.

In granting summary judgment, the district court ruled "the $100.00 per month late fee" charged by the Anchorage should be deleted from the balance owed. The account statement indicates the $100.00 per month fees referred to by the district court were for "Insurance Expiration" fines.[1] The district court ultimately awarded the Anchorage $15,839.50 for unpaid assessments on Unit 115.

To establish the precise amount owed by the Meyers, the Anchorage presented the affidavit of its property manager, which stated the balance owed for Unit 115 continued to accrue after the 2015 filing of the lien and amounted to $17,439.50 as of the date of the foreclosure sale of Unit 115 in May 2016. The Anchorage also provided an account statement for Unit 115, dated May 20, 2016, also showing a balance owed of $17,439.50. This amount differs from the $15,839.50 award made by the district court. As shown by the account statement, however, the $17,439.50 balance attested to by the property manager included charges for non-recoverable $100.00 per month insurance expiration fines. Although the record contains no explanation of how the total of $15,839.50 was reached, it appears this amount may

---

[1] We need not consider the correctness of the district court's refusal to allow recovery of the insurance expiration fees because the Anchorage did not appeal or answer this appeal to challenge that ruling. Moreover, we note the Anchorage provided no explanation of these fines and did not present any evidence showing unit owners were required to maintain liability insurance or were subject to fines if they failed to do so.

have been reached by deducting insurance expiration fines from the balance claimed by the Anchorage.

The difficulty presented to this court in reviewing the judgment is that we are unable to determine the correctness of the amount awarded since the account statement includes an undelineated "Balance Forward" amount of $9,752.99. No explanation was given as to what charges were included in the amount carried forward in the account statement. Based on the fact that the account statement shows a $100.00 insurance expiration fine for every month from May 2015 to May 2016, it seems likely insurance expiration fines were included in the balance carried forward for the period prior to May 2015. If insurance expiration fines were included in the balance carried forward, they should have been deleted in accordance with the district court's ruling. The fact that there is no delineation of the charges included in the balance carried forward makes it impossible for this court to determine what portion of the balance carried forward may have consisted of insurance expiration fines. Thus, we cannot verify the accuracy of the amount awarded from the evidence presented by the Anchorage. As a result, a genuine issue of material fact exists in this case regarding the precise amount owed by the Meyers.

The Anchorage bore the burden of proving that there are no genuine issues of fact and that it was entitled to judgment in its favor for the amounts awarded. See La. C.C.P. art. 966(D)(1). Because the Anchorage failed to provide sufficient information for this court to determine the precise amount the Meyers owed, the Anchorage failed to meet its burden of proof. Therefore, the summary judgment was improperly granted and must be reversed.

In their third assignment of error, the Meyers assert summary judgment was improper because the Condominium Declaration contains a mandatory arbitration agreement that the Anchorage ignored. It is true the Condominium Declaration contains an arbitration agreement. However, the provision only provides for

arbitration to occur "upon the written demand" of either the Anchorage or a unit owner. Further, while the written demand can be made even after legal proceedings are instituted, the demand must be made "prior to the rendering of any judgment." Thus, the Condominium Declaration does not provide for mandatory arbitration unless one of the parties makes a written demand for arbitration prior to the rendition of a judgment in the matter. Although the Meyers argued this matter was subject to mandatory arbitration in their opposition to summary judgment, they did not assert they ever made a written demand for arbitration. Accordingly, since no timely written demand for arbitration was made, arbitration was not required in this matter.

## CONCLUSION

For the reasons assigned, the August 22, 2018 summary judgment rendered by the district court against Douglas and Mary Beth Meyer and in favor of The Anchorage Association, Inc. is hereby reversed, and this matter is remanded to the district court for further proceedings. The Anchorage Association is to pay all costs of this appeal.

**REVERSED AND REMANDED.**